Mission Financial Services Group Corporation
P.O. Box 2049
Corona, CA 92878
Office :
Fax :

Exhibit C

LLC BG RJ HAULING
9283 Coleman Road

MECHANCSVILLE, VA 23116

# PAY-OFF QUOTE

03/30/2022

Account #: 91500489   Finance Charge: 9,061.45
Customer: LLC BG RJ HAULING
Payoff Date: 03/30/2022   First Due Date: 06/21/2021   Original Term: 27
Past Due Amt: $  0.00    Next Due Date: 04/21/2022   Dealer: AL50

|  |  |  |  |
|---|---|---|---|
|  | **Current Balance** |  | 18,459.82 |
| **PLUS:** | Unpaid Late Fees | 0.00 |  |
|  | Other Bal Fees | 0.00 |  |
|  | **Subtotal:** |  | **18,459.82** |
| **PLUS:** | Unpaid Interest | 136.35 |  |
| **LESS:** | Finance Chg Rebate: | 0.00 |  |
|  | Insurance Premium. Refund: | 0.00 |  |
|  | **Net Payoff as of 03/30/2022** | $ | **18,596.17** |

Note: Additional late charges may apply if beyond the grace days when payoff is made which are not reflected.

# COMMONWEALTH OF VIRGINIA
## DEPARTMENT OF MOTOR VEHICLES

## CERTIFICATE OF TITLE FOR A VEHICLE
### KEEP IN SAFE PLACE - ANY ALTERATION OR ERASURE VOIDS THIS TITLE

THE DEPARTMENT OF MOTOR VEHICLES, COMMONWEALTH OF VIRGINIA, HEREBY CERTIFIES THAT AN APPLICATION FOR A CERTIFICATE OF TITLE HAS BEEN MADE FOR THE VEHICLE DESCRIBED HEREON PURSUANT TO THE PROVISIONS OF THE MOTOR VEHICLE LAWS OF THIS COMMONWEALTH, THAT THE APPLICANT NAMED ON THE FACE HEREON HAS BEEN DULY RECORDED AS THE LAWFUL OWNER OF SAID VEHICLE, AND THAT, FROM THE STATEMENTS OF THE OWNER AND THE RECORDS ON FILE WITH THIS DEPARTMENT, THE HEREON DESCRIBED VEHICLE IS SUBJECT TO THE SECURITY INTEREST RECORDS ON FILE WITH THIS DEPARTMENT, AND AS DESCRIBED HEREON, IF ANY. THE MOTOR VEHICLE LAWS OF THIS COMMONWEALTH ALSO PROVIDE THAT ALL TITLE AND REGISTRATION INFORMATION IN THE OFFICE OF THE DEPARTMENT OF MOTOR VEHICLES IS PRIVILEGED AND ONLY SUBJECT TO DISSEMINATION TO AUTHORIZED AGENCIES, BUSINESS ORGANIZATIONS OR AGENTS, GOVERNMENTAL ENTITIES AND INDIVIDUALS UNDER THE CONDITIONS SPECIFIED BY MOTOR VEHICLE CODE SECTIONS 46.2-208, 46.2-209 AND 46.2-210.

ESTABLISHED 10/09/18 698 DMVEM2 SUPPLEMEN'L

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE | VEHICLE BODY | TITLE NO. |
|---|---|---|---|---|
| 1NKZXPTX0GJ109422 | 2016 | KENWORTH | DUMP TRK | 1000434564 |

| EMPTY WGT. | GROSS WGT. | GVWR | GCWR | AXLES | FUEL | SALES TAX PAID | ODOMETER | DATE ISSUED |
|---|---|---|---|---|---|---|---|---|
| 22517 | 77000 | 77000 | | 6 | DESL | VA EXEMPT | *160629* | 01/17/19 |

OTHER PERTINENT DATA: OS

ODOMETER BRAND: ACTUAL  PRIOR TITLE NO.

**Lienholder name(s) and address(es):**
MISSION FINANCIAL SERVICE CORP
6604 TARA BLVD
JONESBORO GA 30236

THIS IS NOT A TITLE NUMBER



LIEN RELEASE — INTEREST IN THE ABOVE DESCRIBED VEHICLE IS HEREBY RELEASED
By _____
TITLE _____ DATE _____

**Name(s) and address(es) of vehicle owners:**
BG & RJ HAULING LLC
9123 COLONNADE CIR
ASHLAND VA 23005-7463

---

**A** — Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment. The undersigned hereby certifies that the vehicle described in this title has been transferred to the following (printed name and address of Buyer(s)):

Buyer(s) Name _____
Street _____ City, State, Zip _____

ODOMETER READING (No Tenths) _____

I certify to the best of my knowledge that the odometer reading is ☐ ACTUAL Mileage ☐ NOT ACTUAL Mileage (odometer discrepancy) ☐ IN EXCESS of Mechanical Limits ☐ Model year is 10 years or older and was exempt from odometer disclosure in prior state of title (applicant must present out-of-state title showing exemption)

DATE OF SALE _____
SALE PRICE _____

Signature of Seller(s) _____  Printed Name of Seller(s) _____

Signature of Buyer(s) _____  Printed Name of Buyer(s) _____
I am aware of the above odometer certification made by the Seller(s)

VSA3L — I am aware of the above odometer certification made by the Seller(s)

Dealer's No. _____ Licensing Jurisdiction _____

ASSIGNMENT OF TITLE BY OWNER • NOTIFY DMV WHEN VEHICLE IS SOLD

MISSION FINANCIAL SERVICE CORP
6604 TARA BLVD
JONESBORO GA 30236



Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete the odometer disclosure statement or providing a false statement may result in fines and/or imprisonment.

## B — DEALER REASSIGNMENT

I am aware of the dealer's odometer certification. Date of Sale _____ Sale Price _____
Buyer(s) Printed Name _____
Buyer(s) Signature _____
Buyer(s) Address _____
City _____ State _____ Zip Code _____

ODOMETER READING _____ (No Tenths)
I certify to the best of my knowledge that the odometer reading is:
☐ ACTUAL Mileage  ☐ NOT ACTUAL Mileage (odometer discrepancy)  ☐ IN EXCESS of Mechanical Limits
☐ Model year is 10 years or older and was exempt from odometer disclosure in prior state of title (applicant must present out-of-state title showing exemption)

Dealer(s) Signature _____ Dealer(s) Printed Name _____ Dealer Number _____ Licensing Jurisdiction _____

The dealer certifies that the vehicle described in this title was transferred to the above buyer and that the odometer reading has been disclosed to the buyer.

## C — DEALER REASSIGNMENT

I am aware of the dealer's odometer certification. Date of Sale _____ Sale Price _____
Buyer(s) Printed Name _____
Buyer(s) Signature _____
Buyer(s) Address _____
City _____ State _____ Zip Code _____

ODOMETER READING _____ (No Tenths)
I certify to the best of my knowledge that the odometer reading is:
☐ ACTUAL Mileage  ☐ NOT ACTUAL Mileage (odometer discrepancy)  ☐ IN EXCESS of Mechanical Limits
☐ Model year is 10 years or older and was exempt from odometer disclosure in prior state of title (applicant must present out-of-state title showing exemption)

Dealer(s) Signature _____ Dealer(s) Printed Name _____ Dealer Number _____ Licensing Jurisdiction _____

The dealer certifies that the vehicle described in this title was transferred to the above buyer and that the odometer reading has been disclosed to the buyer.

## D — DEALER REASSIGNMENT

I am aware of the dealer's odometer certification. Date of Sale _____ Sale Price _____
Buyer(s) Printed Name _____
Buyer(s) Signature _____
Buyer(s) Address _____
City _____ State _____ Zip Code _____

ODOMETER READING _____ (No Tenths)
I certify to the best of my knowledge that the odometer reading is:
☐ ACTUAL Mileage  ☐ NOT ACTUAL Mileage (odometer discrepancy)  ☐ IN EXCESS of Mechanical Limits
☐ Model year is 10 years or older and was exempt from odometer disclosure in prior state of title (applicant must present out-of-state title showing exemption)

Dealer(s) Signature _____ Dealer(s) Printed Name _____ Dealer Number _____ Licensing Jurisdiction _____

The dealer certifies that the vehicle described in this title was transferred to the above buyer and that the odometer reading has been disclosed to the buyer.

## E — PERSONAL PROPERTY TAX RELIEF

**DOES YOUR VEHICLE QUALIFY FOR CAR TAX RELIEF?**
If you can answer YES to any of the following questions, your motor vehicle is considered by State Law to have a business use, and does NOT qualify for Personal Property Tax Relief.
• Is more than 50% of the vehicle's annual mileage used as a business expense for federal income tax purposes OR reimbursed by an employer?
• Is more than 50% of the depreciation associated with the vehicle deducted as a business expense for Federal Income Tax purposes?
• Is the cost of the vehicle expensed pursuant to Section 179 of the Internal Revenue Service Code?
• If the vehicle is leased by an individual, does the leasing company pay the tax without reimbursement from the individual?
This vehicle is for ☐ Personal Use  ☐ Business Use   Check one of the boxes.   See business use criteria above.

## F — LIEN INFO

LIENOR'S NAME _____ LIENOR CODE _____ DATE OF LIEN _____
ADDRESS _____
CITY _____ STATE ___ ZIP ___

## G — APPLICATION FOR REGISTRATION (LICENSE PLATES ISSUED)

VEHICLE COLOR: _____ REGISTRATION PERIOD: ☐ 1 YR  ☐ 2 YRS ($2 discount)  ☐ 3 YRS ($3 discount) (Emissions areas not eligible for 3 YR registration)

INSURANCE CERTIFICATION: A vehicle must be insured with liability coverage when it is registered, and it must remain insured while registered, whether or not it is operated, OR the uninsured motor vehicle fee must be paid. Penalties are severe for violation of this requirement.
I/We certify that (check one):
☐ This vehicle is insured by a liability policy issued through an insurance company licensed to do business in Virginia and it will remain insured while registered, whether or not it is operated.
☐ This vehicle is not insured; therefore, I am remitting the applicable uninsured motor vehicle fee. (This fee provides no insurance coverage.)

POWER OF ATTORNEY FOR NON-RESIDENT(S) AND CORPORATION(S) NOT DOMICILED IN VIRGINIA: I/we appoint the Commissioner of the Department of Motor Vehicles of the Commonwealth of Virginia, pursuant to the provisions of Virginia Code §46.2-601, processes against me/us may be served in any legal proceeding arising from the operation and/or use of any motor vehicle registered in my/our name(s) in the Commonwealth of Virginia. I/we agree that any lawful process or notice to me/us which is served on the Commissioner shall have the same legal effect as if served on me/us within the Commonwealth of Virginia.

PRIVACY NOTICE: The information, including Social Security Number, is requested in accordance with Virginia Code §§46.2-623 and 46.2-629. Any person who refuses to supply the required information will be denied a certificate of title and/or registration. Title and registration records may be disseminated in accordance with §§46.2-208 through 46.2-214, to business, law enforcement or authorized government entities.

## H — CERTIFICATION OF BUYER

NO PAPER TITLE - Check this box ☐ if you do not want a paper title issued to you. An electronic Certificate of Title will remain on the file for this vehicle at DMV.
If this application is for joint ownership, do you wish clear rights of ownership to be transferred to the surviving owner in the event of the death of either the owner or co-owner?  ☐ YES  ☐ NO
Are any of the vehicle owners on active military duty or service?  ☐ YES  ☐ NO
I/We certify and affirm under penalty of perjury that the information contained in this application is true and correct to the best of my/our knowledge. I/We understand it is unlawful to knowingly make a false statement and any violation may be prosecuted as a felony as provided in Virginia law.

SIGNATURE OF APPLICANT _____ DATE _____
SOCIAL SECURITY NUMBER/FEIN OR CUSTOMER IDENTIFIER OF APPLICANT _____ PHONE NUMBER ( ) _____
STREET ADDRESS _____
CITY _____ STATE ___ ZIP ___
EMAIL ADDRESS OF APPLICANT _____
SIGNATURE OF CO-APPLICANT _____ DATE _____
SOCIAL SECURITY NUMBER/FEIN OR CUSTOMER IDENTIFIER OF CO-APPLICANT _____ PHONE NUMBER ( ) _____
EMAIL ADDRESS OF CO-APPLICANT _____

### DMV USE ONLY
SALE PRICE $ _____ BEFORE TRADE IN ALLOWANCE
TAX $ _____ (MINIMUM TAX MAY APPLY)
TITLE FEE $ _____
TRANSFER FEE $ _____
REG FEE $ _____
WT INCREASE FEE $ _____
PERSONALIZED PLATE FEE $ _____
UMV FEE $ _____
OTHER $ _____

WITH LIEN  ☐ YES  ☐ NO
Proof of Address (specify proof document presented)
CLERK STAMP

(Left margin) ANY ALTERATIONS OR ERASURE WILL VOID THIS CERTIFICATE OF TITLE AND IT MUST THEN BE SURRENDERED TO SECURE A REPLACEMENT.
THIS ONE TO DMV WITHIN 30 DAYS OF SALE DATE.

(Right margin) Log #_____ PLATE TYPE_____ PLATE NO._____ EXPIRE DATE_____ ISSUED_____ TITLE NUMBER_____ DMV USE ONLY

# COMMERCIAL NOTE AND SECURITY AGREEMENT

**LENDER-SECURED PARTY:**



Loan Number: _____

510 Plaza Dr. Ste #1225 College Park, GA 30349
Ph: (404) 975-4800 • FAX: (678) 833-0428

| TO BORROWER(S): | |
|---|---|
| Borrower 1:<br>Name: BG & RJ HAULING, LLC<br>Address: 9283 COLEMAN ROAD<br>MECHANICSVILLE, VA 23116 | Borrower 2:<br>Name:<br>Address: |

| DATE OF THIS STATEMENT FINANCE CHARGES BEGIN TO ACCRUE ON THE DATE THE LOAN IS FUNDED | PRINCIPAL AMOUNT OF LOAN | NUMBER OF MONTHLY PAYMENTS | AMOUNT OF EACH MONTHLY PAYMENT | DUE DATES OF PAYMENTS | | | ESTIMATED FINANCE CHARGE | AGREED RATE OF CHARGE | TOTAL OF PAYMENTS |
|---|---|---|---|---|---|---|---|---|---|
| | | | | DATE OF FIRST PAYMENT | OTHERS DUE SAME DAY OF EACH MONTH | DATE OF FINAL PAYMENT | | | |
| 5/21/2021 | $23,447.09 | 27 | $1,204.02 | 6/21/2021 | | 8/21/2023 | $10,761.45 | 29.95% | $32,508.54 |

AGREED RATE OF CHARGE: 2.495833 percent per month on Unpaid Principal Balance, computed on the basis of the number of days actually elapsed, a month being any period of 30 consecutive days. Borrower(s) promise to pay to Mission Financial Services Group Corporation, or order, all principal, interest, costs, charges and other expenses set forth or otherwise provided for in this Commercial Note and Security Agreement.

    Payments will be applied first to pay any interest accruing since the last payment received, then to late charges, attorney's fee's and collection charges then due, if any and the remaining amount to repayment of the principal balance. This note may be prepaid in full or in part at any time.

    In the event any payment is not paid when due, or Borrower files a petition under the Bankruptcy Laws of the United States, or defaults in any term or provision of any security agreement securing this note, lender, without notice may declare all sums immediately due and payable and proceed to sue for the balance due, exercise the right to foreclose on any collateral securing this note, or both, and shall have available rights and remedies provided in the Uniform Commercial Code in addition to the rights and remedies provided for in this note and any agreement securing it.

    Should lender employ legal counsel for advice, or any other representation with respect to this note, or to represent the lender in any litigation, dispute, suit or proceeding respecting this agreement or to enforce lender's obligations hereunder, borrower(s) agree to pay all reasonable attorneys' fees arising from such service and all expenses, costs, and charges in connection therewith, on demand. Borrower agrees to pay lender reasonable collection costs if this note is in default. Attorney's fees and collection costs shall be payable on demand and if not so paid will become a part of the principal balance due under this note.

    If more than one person, corporation, partnership or entity signs this note, said parties are jointly and severally liable. Borrowers waive any requirements for presentment, demand, notice of default, nonpayment and protest and agree that any extensions of time for payment or acceptance of partial payments shall not constitute a modification of the requirements for timely performance under the terms of this note or discharge the liability of the makers for unpaid sums.

    "Notice to Buyer: 1. Do not sign this contract before you have read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the contract you sign."

    "Liability insurance for bodily injury and property caused to others is not included in this Agreement."

## SECURITY AGREEMENT

    "Borrower(s) named above, for the purpose of securing the principal, interest and all other sums provided for in the above Promissory Note, together with future advances, in favor of lender, grants to lender as secured party a security interest under the UNIFORM COMMERCIAL CODE in and to the following Collateral.

| Year Model | Trade Name | Body Type | Serial Number | License Number | Mileage |
|---|---|---|---|---|---|
| 2016 | KENWORTH | T680 | 1NKZXPTX0GJ109422 | NA | 268635 |

Other LATE PAYMENT CHARGE: 60.20 IF A PAYMENT IS 10 DAYS LATE, A CHARGE OF 5% OF THE AMOUNT OF SUCH PAYMENT WILL BE ADDED TO THE PAYMENT AMOUNT DUE AS WELL AS THE UNPAID BALANCE OR ACCOUNT.

Buyer: BG & RJ HAULING, LLC Vin: 109422      Borrower _____ Co-Borrower _____

DocuSign Envelope ID: 072EFDC3-5377-40AA-9DE5-19826456C73F

The Collateral described above will be permanently located in MECHANICSVILLE County, HANOVER. All equipment, parts, appliances, and appurtenances attached now or in the future are considered to be a part of the Collateral and are included in this agreement as security for payment by Borrower to lender of all sums due or which may become due to secured party under the terms of the promissory note of every date here including all renewals and extensions thereof together with any money that secured party may advance or spend on Borrower's behalf and any interest which may accrue thereon or any collection cost litigation, repossession, storage or repair charges, any attorney's fee which secured party tender may incur and electronic (and /or phone) payment transaction fees.

Borrower certifies and agrees as follows:

1. Borrower is the sole owner of the Collateral described in this agreement and at the time this transfer occurs there are no liens of any kind against the Collateral.
2. Borrower will register, use, operate and control the Collateral in accordance with all applicable laws and regulations and will not use the Collateral, nor allow it to be used, for any unlawful purpose. Further, Borrower will pay promptly all taxes on the Collateral and any liens against it.
3. While Borrower still owes money to secured party under the Note or this agreement, Borrower will not, nor will Borrower assign, pledge, mortgage, or otherwise dispose of the Collateral, unless anything Borrower owes secured party will be paid in full as a result of such action. Also, Borrower will not remove the Collateral, nor allow it to be removed from the permanent location as shown above for more than ten days unless secured party agrees in advance in writing.
4. Borrower will keep the Collateral in as good condition and repair as it is now – ordinary wear and tear accepted – and will show the Collateral at any time secured party requests.
5. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle
6. Borrower will keep the Collateral insured as follows. The carrier and the form of the policy are subject to approval of the secured party.

A. "The policy shall name the Secured Party as an additional insured or loss payee. The Collateral must be insured against fire, theft, vandalism and partial or complete destruction of the Collateral. The deductible shall not exceed $500.00. The Policy proceeds for any claim shall first be paid to the Secured Party up to the amount of balance due to the Secured Party by the Borrower." The insurance Buyer maintains will include comprehensive fire, theft, and collision coverage, insuring the Vehicle in an amount sufficient to cover the Vehicle's fair market value with a maximum deductible of $1000. Buyer must name Seller as loss payee.
   a) Secured party will hold the policies until all obligations secured by this agreement are paid off. "Secured Party may apply any money received upon cancellation of any policy first to costs, expenses and attorneys' fees, then to interest and the remainder, if any, shall be applied to a principal reduction a promissory note."
   b) "If Borrower does not buy or pay for insurance covering the Secured Party's interest in the Collateral, the Secured Party may procure such insurance but is not required to obtain such insurance. If the Secured Party does obtain such insurance, the cost of the insurance will be added to the principal balance of the Note. **Warning: Secured Party will not procure any public liability or property damage insurance and is under no obligation to do so.**"
7. Borrower will be in default if a) borrower does not carry out the obligations of the Note or this agreement on time, or b) has made any untrue statement in this agreement, or c) any voluntary or involuntary proceeding is started by or against Borrower under any bankruptcy or similar law, or d) the Note is in default.
8. If Borrower defaults, secured party will have the right under the law, if it chooses to do the following:
   a) Accelerate the maturity of any obligation in the Note or this agreement;
   b) Take possession of the Collateral or do anything to protect the Collateral;
   c) Require Borrower to assemble the Collateral and make it available at a reasonably convenient location chosen by secured party;
   d) Buy the Collateral at any sale;
   e) Do anything else allowable under the Uniform Commercial Code, the Note or this agreement. Secured party may do some or all the things listed in this section at its option. Even if secured party waives a default, such action will not be a waiver of any later default.
   f) To obtain one or more credit reports, social searches and any other reports concerning you at any time any indebtedness is outstanding including defaults and deficiencies.
9. Should secured party spend any money to protect its security, or if there are any collection costs, attorney fees or other obligations which arise under this agreement:
   a) All of the money will be 1) added to the unpaid balance of the Note, 2) will be secured by this agreement, and 3) will become immediately due and payable, with interest at the same rate as provided for in the note;
   b) Secured party may apply any regular payment received under the note and this agreement, first, to pay expenses, collection costs, or other obligations (other than the original amount of the Note); second, to interest then due; third, to payment of the principal balance;
   c) If Borrower does not pay enough for all of the preceding and after sale of the collateral a deficiency balance remains, Borrower will have to pay the difference immediately. If Borrower does not pay the difference, everything the Borrower owes secured party under the Note and this agreement will be immediately due and payable, including all of the Borrower's unpaid balance under the Note, advances and collection cost, accrued interest and anything else which Borrower has not paid secured party. Secured party may do anything to collect this amount which the law or this agreement allows.
   d) "It is unlawful if you fail to return the motor vehicle described above within thirty (30) days after receiving notice of default. In the event that you default, a notice of default will be mailed to you at the address on this contract or any new address which you provide to the secured Party in writing. Failure to return a motor vehicle which is subject to a security interest is a Class 6 felony. If you have not history of prior felony convictions, such crime is punishable by a term of imprisonment of up to one (1) year, plus a $150,000 fine and all applicable surcharges."

Arbitration: See attached addendum page 4.

Buyer: BG & RJ HAULING, LLC   Vin: 109422   Borrower: [signed: B. D.]   Co-Borrower: _____

DocuSign Envelope ID: 072EFDC3-5377-40AA-9DE5-19826456C73F

| STATEMENT OF LOAN DISBURSEMENTS | AMOUNT OF LOAN: | $23,447.09 |
|---|---|---|
| LESS: PAYOFF ON PRIOR ACCOUNT NO. 74013768 | | $8,981.55 |
| PAYMENTS TO THIRD PARTIES: | | |
| MISSION FINANCIAL DOC FEE + POSTAGE FEE | | $855.00 |
| MISSION FINANCIAL PREPAID F/C | | $1,700.00 |
| MISSION FINANCIAL GAP FEE | | $895.00 |
| NA | | $0.00 |
| NA | | $0.00 |
| NA | | $0.00 |
| AMOUNT ADVANCED TO BORROWER | | $11,015.54 |
| TOTAL AMOUNT OF LOAN | | $23,447.09 |

Lender-Secured Party is not obligated to make this loan until it receives this Note, executed by Borrower(s), at its Georgia location as reflected on page 1 and approves the loan. Borrower understands and agrees that Lender-Secured Party is accommodating Borrower by allowing this Note to be executed at a location other than Lender-Secured Party's location in Georgia so that Borrower(s) do not have to travel to Lender-Secured Party's location to obtain the loan. By signing below, Borrower(s) agrees that as consideration for this accommodation, this agreement is governed by federal law and the laws of the State of Georgia, regardless of where the Borrower(s) signs the Note or where the collateral securing the Note will be permanently located.

Borrow(s) acknowledges that this loan is for commercial purposes.

_Elizabeth Sat_ WITNESS

_Brenda Hun_ (DocuSigned by) BORROWER-DEBTOR

SECURED PARTY

BORROWER-DEBTOR

SECURED PARTY

Buyer: BG & RJ HAULING, LLC  Vin: 109422

Borrower _B.D.D._ Co-Borrower BORROWER-DEBTOR

Page 3 of 4

The following terms are incorporated by reference into this Agreement.

## Addendum to Commercial Note and Security Agreement

Any and all controversy, claims, and disputes by or among any party to the Agreement or their respective officers, employees, agents, contractors, dealers, or partners ("the Arbitration Parties") arising out of or related to the Agreement, any subsequent amendment thereof, or an subsequent agreement between or among any of the Arbitration Parties, and any act or omission arising out of or relating to the relationship of the parties to this agreement, whether that relationship is created by this Agreement or not ("the Arbitration Subject Mater"), shall be determined by submission to binding arbitration as provided herein and the Federal Arbitration Act, 9 U.S.C. §1 et seq., and not by a lawsuit or resort to court process, except otherwise provided herein.

All Arbitration Parties by agreeing to the arbitration of any and all such disputes acknowledge that they are waiving their right by jury and to their right to trial in the courts of this state, and are instead accepting the resolution of any dispute between them through binding arbitration. All claims that any Arbitration Party could make under contract, statute, or common law shall be available to Arbitration Party, including but not limited to actual, statutory and punitive damages and equitable and declaratory relief, except that there shall be no class action relief in arbitration. Any Arbitration Party may make a Demand for arbitration regarding the Arbitration Subject Matter in writing to the American Arbitration Association in accordance with its Commercial Arbitration Rules and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

The place of arbitration shall be College Park, GA. The arbitration shall be governed by Federal law and the laws of the State of Georgia. Hearings will take place pursuant to the standard procedures of the Commercial Arbitration Rules that contemplate in person hearings. The standard provisions of the Commercial Rules shall apply. Arbitrators will have the authority to allocate the costs of the arbitration process among the parties, but will only have the authority to allocate attorneys' fees if a particular law permits them to do so.

IF FOR ANY REASON THIS ARBITRATION CLAUSE BECOMES NOT APPLICABLE, THEN EACH PARTY, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY AS TO ANY ISSUE RELATING HERETO INANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER MATTER INVOLVING THE PARTIES HERETO. <u>Notwithstanding anything provided herein to the contrary.</u> this Agreement does not limit the right of any party to: (i) exercise Self-help remedies, such as but not limited to, setoff;(ii) initiate judicial or non-judicial foreclosure against any real or personal property collateral <u>and Seek a deficiency judgment;</u> (iii) exercise any judicial or power of sales right, or (iv) act in a court of law to obtain an interim remedy, such as but not Limited to, injunctive relief, writ of possession or appointment of a receiver, or additional or supplementary remedies. The filing of a court action is not Intended to constitute a waiver of the right of any party, including the suing party, thereafter to require submittal of the Arbitration Subject Matter to Arbitration <u>should the other party file any claim seeking to defeat the collection of a debt or deficiency judgment that is otherwise part of the Arbitration Subject Matter.</u>

Buyer agrees to make payments in accordance with the payment schedule set forth in Section 3 of this agreement. If Buyer requests a different schedule, Seller is under no obligation to honor that request but if Seller does, at its sole discretion, agree to change the payment schedule, Buyer will make payments in accordance with the revised schedule agreed upon by Buyer and Seller. Buyer understands and agrees that an amendment to the payment schedule could result in Buyer paying more in finance charges because such charges accrue on a simple interest basis pursuant to this agreement

**EXPEDITED PAYMENT CHARGE:** Seller, at Seller's election, may offer Buyer the option to make payments by phone or by other means that would expedite Seller's receipt of those payments as compared to regular mail. Each time Buyer opts to make an expedited payment by phone or other means as may be made available by Seller, Buyer agrees to pay an expedited payment fee in the amount of $19.99 to $29.99. Buyer is not required to make expedited payments, but if Buyer so chooses, Buyer will pay this fee.

| Buyer's Signature: X *(DocuSigned by: Brenda H__)* | Co-Buyer's Signature: x _____ |

BG & RJ HAULING, LLC Loan #: _____    Borrower *(signed)*  _____ Co-Borrower _____